James H. MOLLOY and John D. Wilson, individually, and as stockholders of Claremont Paper Corporation, on behalf of and for the benefit of said Corporation, and Lynham Industrial Corporation, Plaintiffs,

v.

BEMIS BRO. BAG COMPANY and Claremont Paper Corporation, Defendants.

United States District Court, S. D. New York.
March 16, 1955.
On Motion to Reargue March 30, 1955.

Edwin M. Slote, New York City, for plaintiffs.

Donovan, Leisure, Newton & Irvine, New York City, for defendant. Bemis Bro. Bag Company.

Schaeffer, Goldstein & Esbitt, New York City, for defendant Claremont Paper Corp.

SUGARMAN, District Judge.

The defendant Bemis Bro. Bag Company (Bemis) moves for transfer of this suit from this court to the District of New Hampshire, or in the alternative, to the District of Massachusetts, pursuant to 28 U.S.C.A. § 1404(a).

The plaintiffs James H. Molloy and John D. Wilson (Molloy and Wilson) individually and as stockholders on behalf of and for the benefit of defendant Claremont Paper Corporation (Claremont), brought this suit against Bemis and Claremont. They seek certain equitable relief involving a paper mill in New Hampshire and money damages of $2,000,000. They join with the corporate plaintiff Lynham Industrial Corporation (Lynham) which seeks an accounting and money damages of $3,000,000 against Bemis. The defendant Bemis counterclaims against plaintiffs Molloy and Wilson for $1,068,488.04.

Defendant Bemis accompanied its answer with a notice to take the deposi-

tions of the plaintiffs and others. Those depositions, which were concluded in New York City on February 14, 1955, encompassing forty-one sessions over a period of three years, resulted in a record in excess of 3,000 pages. While the depositions were in progress Bemis, pursuant to an order of this court, also inspected and copied a mass of plaintiffs' documents and records. While said depositions were being taken by Bemis, plaintiffs, by their notice, sought to examine Bemis and others. On December 22, 1954 Judge Dawson fixed the priority of examinations by granting a stay sought by Bemis in the taking of its depositions by plaintiffs until it had concluded its taking of plaintiffs' depositions. Judge Dawson's order was silent as to the place of taking either set of depositions.

The taking by Bemis of plaintiffs' depositions and the discovery by it of plaintiffs' documents, etc., having now been concluded, plaintiffs have evinced a desire to proceed, pursuant to their notice and to Judge Dawson's order with the taking of the depositions of Bemis and others. They are now met with Bemis' instant motion to transfer this suit to another district.

 In this motion under 28 U. S.C.A. § 1404(a) the burden is upon Bemis to show that the balance of convenience is so strongly in its favor as to warrant disturbance of the plaintiffs' choice of forum. The standard for determining whether, in its discretion the court will transfer is that applied to the doctrine of *forum non conveniens* before the statute.[1] It has been laid down to be

"* * * the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appro-priate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. * * Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. * * * There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."[2]

 By this standard, Bemis has demonstrated that the balance of convenience is so strongly in its favor as to warrant the granting of its motion to transfer. As to the plaintiffs, Bemis points out that the residence of Molloy has changed from Virginia to Washington, D. C., and that of Wilson from New York to Connecticut. It also claims without contradiction that the corporate plaintiff Lynham, while a New York corporation, has been inactive since January, 1950. As to the defendants, Bemis' assertions that it is a Missouri corporation with its principal place of business and main office in Boston, Massachusetts and licensed to do and doing business in Claremont, New Hampshire are not denied although it admits, as plaintiffs contend, that it is licensed to do business in New York and maintains an office in New York City as a sales office for itself and, until July, 1950, for Claremont. Bemis' claim that the locale of most of the transactions relied upon in the complaint was either New Hampshire or Massachusetts is met by the reply that some of them occurred in

1. Ford Motor Co. v. Ryan, 2 Cir., 182 F. 2d 329, certiorari denied 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624.

2. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, at page 508, 67 S.Ct. 839, at page 843, 91 L.Ed. 1055.

New York, some in Chicago, Illinois, and some on a train en route from Chicago, Illinois to Boston, Massachusetts. However, it is not denied that the documents resulting from these negotiations came into being in either New Hampshire or Boston, Massachusetts. In any event, it is not denied that the defendant Claremont, in whose behalf the individual plaintiffs seek relief, is a New Hampshire corporation operating its mill in New Hampshire and that the complaint herein claims violation of the statutes of New Hampshire and raises issues involving the real estate, mortgage and corporation law of that State.

Bemis claims that its witnesses necessary for the trial reside in New Hampshire or Massachusetts and are an undetermined number in excess of two residing in New Hampshire and an undetermined number in excess of six residing in Massachusetts. Bemis shows without contradiction that the residence of the plaintiffs' witnesses are one in Connecticut and five in New York. There is sharp conflict between the parties as to the relative importance of the testimony of each of the aforesaid witnesses. I am, on the papers before me, unable to "guess"[3] which are "major" and which are "minor" witnesses and am therefore compelled to assume that each is important and merely count the number on each side[4] with the resulting total of eight or more for Bemis and six for plaintiffs. A greater proportion of the fourteen or more are amenable to subpoena process out of the New Hampshire District Court than out of the Southern District of New York.

For the reasons ascribed to a similar claim in the Ford case[5] no consideration has been given to Bemis' claim that if its officers and those of Claremont were to be withdrawn from the active management of the two defendant corporations for protracted depositions and for the trial, which the parties seem to agree will take at least six weeks, serious injury would result to the corporate defendants.

Bemis further points out that, in anticipation of the taking of its deposition by plaintiffs, a subpoena duces tecum was served upon the operator of the Claremont mill requiring the production at the deposition of records of the two corporate defendants and two other corporations of sufficient bulk to fill a truck, whereas the documents marked for identification at the depositions of plaintiffs and others heretofore taken by defendants and those discovered and inspected occupy one filing cabinet drawer and are all collected in New York City and easily moveable. While plaintiffs' counsel has offered to go to Boston or New Hampshire to log the documents mentioned in the subpoena duces tecum, the number to be ultimately marked for identification cannot now be determined.

As above indicated, the complaint seeks certain equitable relief in addition to money damages. Bemis points out that such relief includes, among other things, the appointment of a receiver of Claremont, the impression of a trust upon real estate and other property purchased by Bemis, the reorganization of Claremont and of its business, an accounting by Bemis of its operations of Claremont and that determination of these issues will call into play case and statute law of New Hampshire.

Finally, Bemis compares the state of the docket of the District Court of New Hampshire where the parties could be tried whenever ready with Calendar No. 4 of this court which is presently twenty-three months behind.

The opposing papers on this motion, in addition to minimizing Bemis' arguments for transfer, predicates specific opposition thereto upon Bemis' having used this district for three years without seeking a transfer during that time.

---

3. Ford Motor Co. v. Ryan, note 1 supra.

4. A process properly looked upon with disfavor, 10 F.R.D. 595, at page 608, note 70.

5. Ford Motor Co. v. Ryan, note 1, supra.

While I agree with a decision in this district[6] that appearance and participation in this forum and delay in making the motion to transfer are factors to be given some consideration, they are not alone determinative of the ultimate decision to grant or refuse transfer. The defendants herein have not resorted to the use of the process of this court to an extent comparable to that presented in the Rhodes case where the defendant removed the suit from the State court and, in addition to conducting pre-trial depositions as in the instant case, opposed plaintiff's application for a preference and secured a temporary restraining order. In the case at bar the complaint was filed on January 31, 1952. An appreciable amount of the delay was occasioned by the plaintiffs' retention in succession of three separate sets of counsel. On the other hand further delay during the early spring and summer of 1954 was occasioned in suspending the taking of the plaintiffs' depositions by Bemis when Bemis' counsel, Joseph M. Welch, Esq., became engaged in the Army-McCarthy hearings. It would appear therefore that responsibility for delay lays as heavily upon one side as the other.

The opposing papers also offer another special defense in the argument that to grant the transfer would circumvent Judge Dawson's order of December 22, 1954, which permitted plaintiffs to proceed with the taking of the deposition of Bemis and others at the conclusion of Bemis' taking of plaintiffs' depositions. As heretofore stated, Judge Dawson's order made no mention of the place of taking the depositions and an examination of the filed papers thereon fails to expose that the place of taking the depositions was in any wise an issue on the motion resulting in that order.

Finally, plaintiffs base specific opposition to the transfer upon the contention that, since the "nominal defendant" Claremont, of which the individual plaintiffs are stockholders and sue as such, is a New Hampshire corporation and defendant Bemis is authorized to do business in New Hampshire, although it is a Missouri corporation, transfer may not be made to New Hampshire because the suit could not have been brought originally as a diversity action in that district. It is not disputed that when this suit was brought the residences of the individual parties and the states of incorporation of the corporate parties were

| Plaintiffs | Defendants |
|---|---|
| Molloy–Virginia | Claremont–New |
| Wilson–New York | Hampshire |
| Lynham–New York | Bemis–Missouri |

If the "nominal defendant", Claremont, be considered aligned by interest with plaintiffs, their residences were respectively New Hampshire, Virginia and New York. The fact that the remaining defendant Bemis, a Missouri corporation, was authorized to do business in New Hampshire would not have destroyed diversity. It has been repeatedly held[7] that the residence of a corporation for federal diversity jurisdiction is its state of incorporation and not the state in which it is authorized to do business.

While plaintiffs' counsel may be inconvenienced in having to take Bemis' deposition and to try this case out of New York City, that is not one of the criteria cognizable on a motion to transfer.[8]

For all of the foregoing, the defendants' motion is granted to the extent of transfering this cause to the District of New Hampshire.

Settle an order accordingly.

### On Motion to Reargue

Plaintiffs' motion to reargue defendant Bemis' motion to transfer this cause

6. Rhodes v. Barnett (I), D.C.S.D.N.Y., 117 F.Supp. 312.

7. 28 U.S.C.A. § 1332(a) (1)—cases cited at note 211, p. 354, col. 1; Nyberg v. Montgomery Ward & Co., D.C.W.D.Mich., 123 F.Supp. 599.

8. Henderson v. American Airlines, Inc., D. C.S.D.N.Y., 91 F.Supp. 191, at page 193.

is granted. Upon reargument the decision dated March 16, 1955 granting said motion to the extent of transferring this cause to the District Court of New Hampshire and the order entered March 23, 1955 thereon are in all respects adhered to.

"Factual matters of importance" and the "applicability of certain case law" were not overlooked in deciding the original motion for transfer.

The moving papers on this motion to reargue merely rehash what was fully urged by plaintiffs in opposition to the original motion and carefully considered by the court. The only new matter is a guarded suggestion that "plaintiffs *may* desire to add Mr. Guard as a co-defendant" (emphasis supplied). This prospect was not mentioned by plaintiffs originally and even if it had been, would not have added sufficient weight to plaintiffs' contentions thereon to have altered the ultimate result.

Stay in the show cause order of March 25, 1955 is vacated. It is so ordered.